[Southern Railway Co. v. Shelton, Admr.]

# Southern Railway Co. *v.* Shelton, Admr.

*Action against Railroad Company to recover for Alleged Negligent Killing of Plaintiff's Intestate.*

1. *Contributory negligence; requisites of plea.*—Contributory negligence is a special and affirmative defense, and to be pleaded at all must be pleaded with particularity, and no other acts of negligence than those specially pleaded can be proved on the trial of the case, and, if proved, they can not be made a predicate for a verdict for the defendant.

2. *Action against railroad company; contributory negligence.*—In an action against a railroad company to recover damages for the alleged negligent killing of plaintiff's intestate, where the defendant by special plea sets up the contributory negligence of the plaintiff's intestate, in that "he attempted to cross the track in front of a moving engine without first stopping, looking and listening, and he was run over and killed," and from the evidence introduced the jury might, with equal propriety have found that the plaintiff's intestate was not guilty of the negligence averred in said plea, but was guilty of negligence in walking along or in crossing the track in front of the engine, after he knew of its approach, said plea of contributory negligence is not sustained by the evidence, and the defendant is not entitled to the affirmative charge in its favor as to the counts charging simple negligence on its part.

2. *Action against railroad company for killing of intestate; when wanton negligence not shown.*—In an action against a railroad company by an administrator to recover damages for the killing of his intestate, it was shown that the intestate was run over and killed by one of the defendant's trains about 7:15 o'clock in January; that the place where the intestate was run over and killed by the engine of the defendant was at the intersection of two streets in a city; that the intestate was proceeding along one of said streets and was run over while pasing over the track of the defendant. The evidence was conflicting as to the number of people who ordinarily passed the point where the intestate was stricken, at the hour of the occurrence, but there was no

conflict as to the fact that on the occasion in question there were not more than three people at or near the place other than the crew on the defendant's train. The evidence showed, without conflict, that the engine was running at the rate of four or five miles an hour; that the bell of the engine was being constantly rung and the headlight was burning brightly. *Held*: That the enginemen were not guilty of recklessness or wantonness as to the manner in which the engine was driven upon and over the place where the intestate was killed.

4.  *Same; same.*—In such a case, in addition to the facts as above stated, the engineer and fireman each testified that he was looking ahead of the engine while it was approaching and crossing the street where the plaintiff's intestate was killed, and that ne saw no one in front of the engine. The flagman testified that when the engine was 50 or 75 feet away from the place where the intestate was run over, he saw a man for a few moments about the middle of the crossing of the street; that he saw him by the rays of the headlight, but in a few moments the rays passed over the man and he could not see him any further, as the night was quite dark. *Held*: That under such facts and circumstances, in conceding that the enginemen saw plaintiff's intestate when 75 feet away, there was no basis for a finding by the jury of wantonness on the part of either the engineer or fireman in failing to control the engine with reference to the person who was seen on the track at such distance in front of the approaching engine.

5.  *Same; same.*—In such a case, in addition to the facts above set out, the engineer and fireman testified that the light from the headlight of the engine would enable them to see a person in front of the track distinctly as close as within 8 to 10 feet of the engine; that if such person was on the engineer's side of the track he could see him when within 2 feet of the engine, and the fireman could see him when within 8 feet, and so could the fireman see such person, if on his side of the track when within 2 feet of the engine, and the engineer could see him when within 8 feet. The plaintiff's intestate was on the track of the defendant at the intersection of a street, 75 feet in front of the approaching engine. It was further shown by the evidence that neither the engineer nor fireman made any effort to stop the train, and the intestate was run over and killed. *Held*: That under such evidence it was open to the jury to find that the enginemen were guilty of wantonness in failing to attempt to stop the

[Southern Railway Co. v. Shelton, Admr.]

train, and not seeking to avert the accident to plaintiff's intestate.

6. *Evidence; when rulings on motion to amend answers to interrogatories without injury.*—Where in a civil suit the plaintiff propounded interrogatories to the defendant as provided by statute, and after making answer to such interrogatories the defendant moved the court to be allowed to amend the answers by striking out certain answers made by the employes of the defendant on information and belief and inserting in lieu thereof similar statements made by the employes who had knowledge of the facts set forth in said answer, the overruling of such motion involves no injury to the defendant, when it appears that the answers sought to be stricken by the motion of the defendant were subsequently stricken out on plaintiff's motion, and the employes having knowledge of the facts were subsequently examined as witnesses by the defendant and fully deposed to every fact sought to be answered in the answers to the statutory interrogatories.

7. *Evidence; when answers to interrogatories properly stricken.* In an action against a railroad company to recover damages to plaintiff's intestate, where the plaintiff propounded interrogatories to the defendant as provided by statute and said interrogatories were answered by the employes of the defendant, and to some of the questions propounded the said employes answered only upon information and belief and sought to give reasons for the defendant's failure to perform certain duties, such answers on the part of the witnesses to whom the interrogatories were propounded are properly stricken.

8. *Examination of witness; when reading testimony given on former trial without prejudice.*—In the trial of a civil case, it is not prejudicial to the defendant if the plaintiff on the cross examination of one of the defendant's witnesses, reads to him the stenographic report of his testimony given on the former trial of the same case.

9. *New trial; when judgment overruling motion reversed.*—An order of the trial court refusing to grant a new trial on the ground that the evidence was not sufficient to support a verdict, or that the verdict was contrary to the evidence, will not be reversed on appeal, unless after allowing all reasonable presumption of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust.

13c

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WILLIAM S. ANDERSON.

James A. Shelton, as the administrator of Edward H. Shelton, brought this suit against the Southern Railway Company on the 20th day of September, 1900, claiming $50,000 damages for the killing of plaintiff's intestate, who was not an employe of the defendant company.

Shelton was run over and killed on the night of the 23d of January, 1900, at about 7 o'clock. The complaint contained forty-six counts, a number of which were stricken out upon demurrer and by amendment, leaving at the time of the trial, the 1st, 4th, 10th, 14th, 16th, 19th, 21st, 22d, 23d, 44th and 46th counts. The 1st count of the complaint alleges that the defendant, in the operation of its engine along its track at the corner of Water and Beauregard streets, in the city of Mobile, negligently run over and killed plaintiff's intestate. The negligence averred in the 4th count was that the engine was moved around a curve up to the place at which plaintiff's intestate was killed after night-fall and across and upon the public streets of the city of Mobile, without having any light cast upon the track or a flagman ahead of the engine. The negligence averred in the 10th count was that in the operation of the engine the defendant company "negligently run over and killed Edward H. Shelton, of whose estate the plaintiff is the administrator, and who was then there upon a public street of the city of Mobile," etc. The negligence averred in the 14th count was that the defendant company employed a person whose duty it was under such employment to be in front of its engine or cars when the same were being operated at the place where the injury occurred, and to warn all persons on or near the track of the approach of the engine and cars, and that the person so employed neglected to warn the said Shelton, although the said Shelton was then upon or about to go upon said track, which was in the public street of the city of Mobile, and was in great danger of being stricken by said engine. The negligence averred in the 16th count of the complaint was that the engineer in charge of the engine failed to keep a proper

lookout. The negligence averred in the 19th count is that the track was so constructed that a person upon the track at the point where said Shelton was killed could not be seen by the engineer or fireman upon said engine in the night at a sufficient length of distance to enable the engine to be stopped before reaching him when approached at the speed at which the engine was moving. In the 21st count of the complaint an ordinance of the city of Mobile was set out requiring the Mobile & Birmingham Railroad Company to place a flagman in front of its engine or cars when about to cross Water street or Beauregard street, and it was averred that the defendant then and there operated an engine and cars over the track of the Mobile & Birmingham Railroad Company under a lease by which the defendant had control of the Mobile & Birmingham Railway Company and had assumed its duties and obligations; and the negligence averred in said complaint was that the defendant operated the engine and cars across Water street or Beauregard at the time of the accident complained of, without having any flagman in front thereof, as required by said ordinance, and that such negligence was the proximate cause of the injury complained of. In the 22d and 23d counts the ordinance referred to above is set out, and the averment of the lease is made; and in the 22d count the negligence alleged was that the defendant was operating the train across Water street on Beauregard street without having a flagman so stationed; and in the 23d count the negligence alleged was that the flagman whose duty it was to be in front of the engine or cars and to warn all persons on or near the track of the approach of said engine and cars, neglected to warn the said Edward H. Shelton of the approach of said engine and cars. The 44th count charges wanton negligence in that the defendant wantonly ran over and killed Edward H. Shelton. The 46th count sets out the ordinance referred to and avers that the injury was the proximate result of the negligence of the engineer in charge of the train, in that he operated the train across Water street without a flagman stationed ahead of the train, as required by said ordinance,

The defendant pleaded the general issue and three special pleas, the substance of which is sufficiently shown in the opinion.

The plaintiff's evidence tended to show that Shelton, the deceased, was run over and killed at or near the crossing of Beauregard and Water streets, about 7:15 o'clock on the night of January 3, 1900; that a short time before he was run over he was at the Mobile & Ohio docks, which are east of the scene of the accident; that he left said docks, stating that he was going home, and that the last seen of him by one of plaintiff's witnesses was by the witness Connors, who saw him as he was going up Beauregard street near Commerce street. It was shown that the train which ran over Shelton came around a curve in the defendant's road from Commerce street to Water street; that the engine was moving in a westerly or northwesterly direction in nearly the same direction as Shelton was going. None of plaintiff's witnesses saw the accident. The only person who saw the accident was the witness Harrison Baker, who was introduced as a witness for the defendant, and testified that he was standing a short distance west of Water street on Beauregard street and saw the engine approaching; that he stopped to let the engine and cars attached pass; that he saw Shelton, who was standing about fifteen feet from him, attempt to step upon the footboard of the tender attached to the engine, when he fell and was run over and killed.

The plaintiff filed interrogatories to the defendant, under the statute, which interrogatories the defendant answered, through its yard master, B. F. Turner, and a brakeman, H. A. Roach.

On November 15, 1901, after there had been a mistrial in the case, the defendant moved the court to allow it to amend its answers filed to said interrogatories by striking out certain portions of the answers of said Turner and Roach, which answers sought to be stricken were about facts of which Turner and Roach did not have personal knowledge, but their answers were based upon information derived from the engineer and fireman in charge of the engine, and the motion further asked

that said answers be further amended by adding thereto the statements or answers of the engineer and fireman as to such facts. The court refused to allow the amendment asked, and overruled the motion, and to this ruling the defendant duly excepted. The other facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the court, at the request of the plaintiff, gave to the jury the following written charges: (B.) "The court charges the jury that if they believe from the evidence that it was unreasonably dangerous to operate a train at the point where it is claimed that Edward H. Shelton was killed, without having a flagman or switchman stationed in front of the engine, and that it was, for that reason, the duty of the switchman or flagman to be in front of the engine, irrespective of the ordinance introduced in evidence, and that the defendant's said switchman or flagman neglected to be at his place of duty, and that this was the proximate cause of the injury, you must find for the plaintiff, irrespective of where the injury occurred, unless you find the deceased was guilty of contributory negligence, or was at the time of the injury a trespasser upon property in the possession of the defendant." (46.) "The court charges the jury that if they believe from the evidence that there was an ordinance of the city of Mobile as is described in the complaint, and that the defendant company operated its train along the track of the Mobile & Birmingham Railroad Company under a lease from it, at the point where the said track crosses Water street at its intersection with Beauregard street, and if the jury further believe from the evidence that in doing so the said engine was run against the said Edward H. Shelton so as to injure and kill him, and that said accident was the proximate result of negligence on the part of the engineer in charge of said engine in operating said engine across Water street without a flagman being stationed ahead of the train, as required by the ordinance, they must find for the plaintiff, unless they further find from the evidence that Edward H. Shelton was himself guilty of contributory negligence." (A.) "The court charges

the jury that if they believe from the evidence that there was in force an ordinance such as is described in the complaint, and that the intersection of Beauregard and Water streets was a public crossing much frequented by the citizens of Mobile; and that all these facts were known to the engineer in charge of defendant's engine, but that he nevertheless willfully operated said engine over that crossing without complying with said ordinance, at a time when he knew that some person would likely be upon said track at that point, or sufficiently near thereto to be hit by the engine in passing, and in a manner that he knew was likely to cause them to be so hit, this amounted to a wanton wrong, and if it was the proximate cause of the death of Edward H. Shelton, the plaintiff is entitled to recover." (19.) "The court charges the jury that if they believe from the evidence that the defendant company killed Edward H. Shelton by running its engine upon him at the point described in the nineteenth count of the complaint, while he was then and there upon one of the public highways of the city of Mobile, in which the defendant's track was so imbedded as to form a part thereof, and if they further believe from the evidence that said accident was due to the fact that said track was so constructed that a person upon the track at the point where the said Shelton was killed could not be seen by the engineer or flagman upon said engine in the night time a sufficient distance to enable the said engine to be stopped before reaching him, when approaching at the speed at which the said engine was then moving, and to the further fact that the said engine was moving up to the said point in the night time and run against said Shelton, who was then and there upon the track, without taking the precaution necessary to enable said engineer to know that any obstruction was upon said track at said point, in time to have stopped his engine before committing said injury, then the jury ought to find a verdict for the plaintiff, unless they further find from the evidence that the said Edward H. Shelton was guilty of contributory negligence." (5.) "The court charges the jury that if they believe from the evidence that there was in force an or-

dinance such as is described in the complaint, and that the intersection of Beauregard and Water streets was a public crossing much frequented by the citizens of Mobile, and that if an engine was operated on defendant's track over said crossing without complying with such ordinance, some pedestrian would probably be struck by the engine, and that all of these facts were known to the engineer in charge of the defendant's engine, but that he, nevertheless, willfully operated said engine over that crossing without complying with said ordinance, then this was a wanton wrong, and if it was the proximate cause of the death of Edward H. Shelton, the plaintiff is entitled to recover, whether the said Edward H. Shelton was guilty of contributory negligence or not." (4a.) "The court charges the jury that if a railroad company operates an engine at night around a curve imbedded in a much frequented public street of a city, without having either a light cast upon its track, or some person a sufficient distance ahead of the engine to inform the engineer or fireman of the presence of obstructions in time to enable the engineer to stop the engine before reaching the same, this would constitute such negligence as to render that railroad company liable for any injury proximately resulting therefrom, unless the person injured was guilty of some negligence that proximately contributed to his injury." (21.) "The court charges the jury that if they believe from the evidence that Edward H. Shelton was killed by one of the defendant's locomotives being run against him while he was upon the public street known as Water street where the same intersects with Beauregard street, by reason of the defendant's operating its said engine across Water street where the same intersects with Beauregard, upon a track imbedded in Water street, which the defendant had leased from the Mobile and Birmingham Railroad Company, without having any flagman in front thereof, although required by an ordinance to do so, as described in the complaint, then the jury must find for the plaintiff, unless they further find from the evidence that said Edward H. Shelton was guilty of contributory negligence." (4.) "The court charges the jury that if they believe from the evidence that Edward H. Shelton

was upon the defendant's track, imbedded in one of the public streets of the city of Mobile, and that the defendant company, after nightfall, operated an engine around a curve upon said track and up to the point where Edward H. Shelton was upon its track, without having any light cast upon its track, or a flagman ahead of said engine a sufficient distance ahead to inform said engineer or fireman of the presence of any person upon said track in time to enable the engineer to stop before reaching such person, and that, by reason of not having a light upon said track or a flagman in front of said engine, the engineer in charge of said engine was unable to learn of the presence of the said Shelton, and for this reason ran said engine upon him and killed him, then the jury ought to find a verdict for the plaintiff, unless they further believe from the evidence that the said Edward H. Shelton was himself guilty of contributory negligence." (C.) "The court charges the jury that if a railroad company operates an engine or train of cars over one of the public streets in the city of Mobile in a manner and at a time and place where neither its engineer or fireman can see obstructions upon the track ahead of the engine a sufficient distance to stop the train before striking the obstruction, then it became the duty of the railroad company to place a guard ahead in the direction in which the train is moving for the purpose of avoiding the accident; and if the jury believe from the evidence that Edward H. Shelton was, while passing along such public street, without negligence on his part, directly contributing to the injury, run against and killed by one of the defendant's trains, and this accident is due to the fact that th defendant was operating an engine, at night, around a curve upon one of the public streets of the city of Mobile without having any person stationed ahead of the train in a manner and at a time and place where neither the engineer nor fireman could discover any obstructions upon the track in time to stop the engine before reaching it, then the jury should find for the plaintiff." (16.) "The court charges the jury that if they believe from the evidence that Edward H. Shelton was run over and killed

by the defendant's engine at the point and in the manner, and under the circumstances, described in the sixteenth count of the complaint, and that the said injury was due to the neglect of the engineer in charge of said engine to keep a proper lookout ahead of the engine and in the direction in which the engine was moving, then the jury ought to find for the plaintiff, unless they further believe from the evidence that Edward H. Shelton was guilty of contributory negligence." (D.) "The court charges the jury that if they believe from the evidence that the defendant company operated a locomotive with certain cars attached thereto, on Beauregard street in the city of Mobile; that said track at that point was imbedded and formed a part of the street, and was used for switching purposes as a part of the defendant's yard, and that it was unreasonably dangerous to operate the trains of the defendant along that part of said track which is upon said public street without having a flagman to warn the public of their approach, and that the defendant, nevertheless, neglected to have any person whose duty it was to be in front of its engine, or cars thereto attached, when the same were being operated at said point, to warn all persons on or near said track of the approach of said ngine and cars; and if the jury further believe from the evidence that Edward H. Shelton was upon or about to go upon that portion of said track which was so imbedded in said public street and was then and there stricken and killed by said train, and that this injury was the proximate result of said failure on the part of the defendant to have such person so stationed ahead of said train, then the jury ought to find for the plaintiff, unless the jury are reasonably satisfied from the evidence that the plaintiff's intestate was himself guilty of contributory negligence."

The defendant separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the following charges requested by it: (1.) "The court charges the jury that if they believe from the evidence that Shelton was not injured while attempting to cross Water street, but was injured more than fifty feet west of the west line of Water street, then the failure of the defendant to flag

the Water street crossing was not negligence on the part of the defendant." (2.) "The court charges the jury that it is the duty of a person approaching the track of a railroad for the purpose of crossing it, to stop and look, and, if necessary, to listen for approaching trains, and if the rjuy further believe from the evidence thatthat neither the engineer nor fireman saw Edward H. Shelton while he was approaching defendant's track, or while he was attempting to cross, and if they further believe that said Edward H. Shelton failed to stop and look before attempting to cross the track and was run over and killed by a locomotive or car while he was attempting to cross the track, he was guilty of such contributory negligence as would prevent his administrator from recovering in this action, and they must find a verdict for the defendant." (3.) "The court charges the jury that if they believe from the evidence that Shelton was hard of hearing and was killed while walking westwardly along defendant's track, his administrator can not recover in this action." (4.) "The court charges the jury that under the evidence in this case the employees of the deefndant were not guilty of any wanton or willful negligence." (5.) "The court charges the jury that it is the duty of a person approaching the track of a railroad for the purpose of crossing it, to stop and look in both directions, and, if necessary, to listen for approaching trains, and if the jury believe from the evidence that Edward H. Shelton failed to stop and look before attempting to cross the track and was run over and killed by a locomotive or a car while so attempting to cross the track, he was guilty of contributory negligence, and his administrator can not recover in this action." (6.) "The court charges the jury that where a person, who is about to cross a railroad track, sees a train approaching and misjudges its speed or is unable to cross before the train reaches the point of crossing, but makes the attempt and is run over and killed, he is guilty of such contributory negligence as to preclude a recovery by his administrator for the negligence on the part of the railroad company or its employees." (7.) "The court charges the jury that if

they believe the evidence, they must find for the defendant." (8.) "The court charges the jury that if they believe the evidence, they can not find for the plaintiff under the first count of the complaint." (9.) "The court charges the jury that if they believe the evidence, they can not find for the plaintiff under the tenth count of the complaint." (10.) "The court charges the jury that if they believe the evidence, they can not find for the plaintiff under the sixteenth count of the complaint." (11.) "The court charges the jury that if they believe the evidence, they can not find for the plaintiff under the nineteenth count of the complaint." (12.) "The court charges the jury that if they believe the evidence, they can not find for the plaintiff under the twenty-first count of the complaint." (13.) "The court charges the jury that if they believe the evidence, they can not find for the plaintiff under the twenty-second count of the complaint." (14.) "The court charges the jury that if they believe the evidence, they can not find for the plaintiff under the twenty-third count of the complaint." (15.) "The court charges the jury that if they believe the evidence, they can not find for the plaintiff under the forty-fourth count of the complaint." (16.) "The court charges the jury that if they believe the evidence, they can not find for the plaintiff under the forty-sixth count of the complaint."

There were verdict and judgment for th plaintiff, assessing his damages at $15,000. The defendant moved the court to set aside the verdict and judgment and grant it a new trial upon the following grounds: "First. Because the verdict of the jury was excessive. Second. Because the said verdict was contrary to the law as charged by the court. Third. Because the verdict was contrary to the evidence. Fourth. Because the evidence was not sufficient to support the verdict." The court overruled this motion, and the defendant duly excepted. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

BESTOR & GRAY, for appellant.—The court erred in refusing to allow the defendant to amend its answer to the interrogatories as propounded. The result of the

court's refusal to allow the defendant to amend by adding the statement of the engineer and fireman, was that the answers, as read to the jury after the portions had been struck out upon motion of the plaintiff, were silent, among other things, as to what the engineer and fireman were doing as the engine started across Water street.

The examination of the adverse party by the filing of interrogatories is governed by the same rules as bills of discovery in chancery.—*Saltmarsh v. Brewer*, 22 Ala. 221; *Ex parte Ashurst*, 100 Ala. 573.

It was Shelton's duty, before attempting to cross the track of the defendant company, to stop, look and listen for approaching trains, and if he did not he was guilty of such contributory negligence as would bar his administrator from recovering in this action.—*Haetsch v. Railway Co.*, 87 Wis. 304; *Myers v. R. R. Co.*, 150 Pa. St. 386; *Smith v. Railroad Co.*, 141 Ind. 92; 3 Elliott on Railroads, 1772; *Leak v. Ga. Pac. R. Co.*, 90 Ala. 162; *Cen. of Ga. v. Foshee*, 125 Ala. 212. Under the facts of the case most favorable to the appellee there can be but two conclusions. One is that Shelton did not look or listen for the approaching train, and the other is that if he did look or listen he did not heed what he saw and attempted to cross in front of the moving engine and was run over and killed. Either or both conclusions are, under the authorities cited above, fatal to his recovery.

There was nothing to show that the defendant or its employees were guilty of recklessness or wanton negligence as charged in the 44th count of the complaint; and, therefore, the defendant was entitled to the general affirmative charge as to this count.—*Bir. R. & E. Co. v. Bowers*, 110 Ala. 328; *A. G. S. R. R. Co. v. Moorer*, 116 Ala. 642; *Ga. Pac. R. Co. v. Lee*, 92 Ala. 262; *Burson v. L. & N. R. Co.*, 116 Ala. 198.

The court erred in overruling the defendant's objection to the reading of the examination of the witness, Will Nicholson, upon the previous trial of the case. This was not the proper way to impeach the witness. *Bessemer Land & Improvement Co. v. DuBose*, 125 Ala. 442.

GREGORY L. & H. T. SMITH, *contra.*—The court did not err in refusing to allow the defendant to amend its answer to the statutory interrogatories. It is true that the defendant may amend its answer so far as it constitutes a matter of pleading; but it is not true that the defendant may amend its answer so as to defeat its use as a matter of evidence.—*Davidson v. Rothchilds,* 49 Ala. 104; *McGhee v. Mahone,* 37 Ala. 263-4; *Pearsall v. McCartney,* 28 Ala. 110.

Appellant has not pleaded the contributory negligence which it claims to have established. The appellant has rested its insistence that it was entitled to the general affirmative charge, under all of the counts except the forty-fourth, solely upon the contention that it was shown by the evidence, without controversy, that the plaintiff's intestate had been guilty of contributory negligence which proximately contributed to his injury and death, in that he either undertook to cross the railroad track of the defendant company without first stopping, looking and listening, or that, having stopped, looked and listened, he saw the engine approaching, and, nevertheless, undertook to cross in front thereof while moving towards him in such close proximity thereto as to cause his own death. This is not the case; but if we should concede this to be true, it would by no means follow that the defendant was entitled to the general affirmative charge. Contributory negligence must confessedly be pleaded, and cannot be taken advantage of under the general issue.—*Ala. Midland R. R. Co. v. Johnson,* 123 Ala. 197. And a charge which predicates the right of the defendant to a verdict on an act of contributory negligence not covered by any plea in the case, is properly refused.—*Birmingham Ry. & Elec. Co. v. City Stable Co.,* 119 Ala. 615.

The appellant's contention is not sound. But we do not think that the argument to the effect that when a person is found dead upon a public crossing, and it appears that he has been run over and killed by the fault of a railroad company, the inference arises, without any further evidence, that he either did not stop, look and listen, or that, having seen the train approaching, he undertook to cross ahead of it, is sound. There

are authorities in other States upon both sides of this question. But most of them can be reconciled.—7 Am. & Eng. Ency. Law (N. S.), 440; *Schum v. R. R. Co.*, 107 Pa. St. 12; *Kimball v. Friend*, 27 S. E. Rep. 903; *Railroad Co. v. Weber*, 76 Pa. St. 168; *Railroad Co. v. Hall*, 61 Pa. St. 368; *Manning v. Detroit, etc., R. R. Co.*, 31 N. W. Rep. 151. The precise point seems not to have been decided in Alabama in a case where the facts were identical with those at bar, but the principle is settled. *Bromley v. Bir. Min. R. R. Co.*, 95 Ala. 403; *L. & N. R. R. Co. v. Webb*, 90 Ala. 189; *Con. Imp. Co. v. Stead*, 95 U. S. 161; *Helton v. Mid. R. R. Co.*, 97 Ala. 275.

The evidence in this case fails to show that the plaintiff was guilty of contributory negligence.—*C. & A. R. Co. v. Causler*, 97 Ala. 236; *Pannell v. Railroad Co.*, 97 Ala. 303; *L. & N. R. R. Co. v. Bouldin*, 121 Ala. 200; *Jones v. Finch*, 128 Ala. 217; *Bir. Min. R. R. Co. v. Jacobs*, 101 Ala. 149; *Beisiegel v. N. Y. C. R. R. Co.*, 34 N. Y. 622; *Strong v. Placeville R. R. Co.*, 8 Am. & Eng. R. R. Cases, 274; *Brewer v. Chicago, M. & St. P. R. R.*, 19 Am. & Eng. R. R. Cases, 301.

From the evidence adduced on the trial, the jury could not have inferred that the engineer or fireman was guilty of wanton wrong or negligence. If there was any testimony tending to show that plaintiff's intestate was seen by the engineer as soon as he started across the track, and in time for the engineer to have stopped the train before reaching him, any contributory negligence on his part would be immaterial.—*Cen. of Ga. v. Lamb*, 121 Ala. 174; *Goffard v. A. G. S. R. R. Co.*, 67 Ala. 119; *M. & C. R. R. Co. v. Martin*, 117 Ala. 367.

MCCLELLAN, C. J.—To those counts of the complaint which ascribed the death of plaintiff's intestate to the negligence of the railway company, the defendant pleaded the general issue and three pleas of contributory negligence. The first of these, being plea 2, is in the following language: "Defendant says that the plaintiff's intestate, said Edward H. Shelton, was guilty of contributory negligence, which negligence proximately contributed to his injury, in this, that he at-

tempted to cross the track in front of a moving engine without first stopping, looking and listening, and was run over and killed, wherefore it says it not liable." The 3d and 4th of these special pleas aver that the negligence of plaintiff's intestate which proximately contributed to his injury and death consisted of an attempt on his part to step upon the foot-board of a moving engine or tender, in which attempt he missed his footing, fell under the cars and was run over and killed. There was evidence tending to support these latter pleas, but, on the other hand, there was evidence upon which the jury might have concluded that he made no such attempt, but that he was stricken by the engine as he was walking along or in the act of crossing the track in front of it, and was thus run over and killed. If the facts were in line with this tendency of the evidence, the striking and running over and killing Shelton was not seen by anybody so far as the evidence discloses and no witness undertakes to state the attending circumstances. It is contended for appellant that the intestate must have been killed, if thus stricken by the engine, in consequence either of going upon the track without stopping and looking and listening for the approaching engine and hence in ignorance of its approach, or of attempting to cross or pass along the track immediately in front of it having a knowledge of its approach; or, in other words, that where death results to a person from being knocked down or run over by an engine the approach of which could have been known to him by the exercise of due care there is a presumption that he was guilty of negligence, contributing to the result, either in going upon the track without taking the measures enjoined upon him as a man of ordinary care and prudence to ascertain whether it was safe for him to do so, or in going upon the track when he had taken such measures and thereby ascertained that the engine was approaching so nearly that his person would be endangered by doing so. It is not necessary for us to decide in this case whether such presumption arises on the facts stated, for the concession that it does arise will not help the appellant. The presumption would not support the second plea, the only plea having any bearing in this connection. It

would be, in a sense, a dual presumption, and alternative in its operation. It would be a presumption *either* that he was killed in consequence of his negligence in not stopping, and looking and listening for the engine before going on the track,—which negligence is pleaded, —*or* that he was killed in consequence of his negligence in going upon the track in front of the approaching engine when, by reason of having stopped, looked and listened, or by some other means, he knew that the engine was approaching and in dangerous proximity to a person on the track at that place—which negligence is not pleaded at all. And the presumption sustains neither the negligence pleaded nor the negligence not pleaded affirmatively, but only the one or the other alternatively; and it would be the purest conjecture on the part of the jury to say that Shelton's death resulted from his negligence alleged in the plea, rather than from his negligence, evidenced in the same way and to the same degree, which is not alleged in this or any other plea of contributory negligence. The precise point in principle was so determined by this court in the case of *Tinney v. Central of Georgia R'y Co.,* 129 Ala. 523, and upon the consideration there adverted to—in line with what is said above—we hold here, conceding the position of appellant's counsel in respect of presumptions of negligence when a person is run over and killed by an engine which he saw approaching or might have seen by the exercise of due care, that it cannot be said that its plea of contributory negligence was proved when upon the evidence tending to support it the jury might with equal propriety have found that Shelton was not guilty of the negligence pleaded but of negligence which was not pleaded. Contributory negligence is a special and affirmative defense. To be availed of it must be pleaded with particularity. And no other acts of negligence than those thus specially pleaded can be proved, and if proved they cannot be made the predicate for a verdict for the defendant.—*Ala. Mid. R'y Co. v. Johnson,* 123 Ala. 197; *Birmingham R'y & Elec. Co. v. City Stable Co.,* 119 Ala. 615. As the presumption relied upon to support defendant's sec-

ond plea did not necessarily and affirmatively sustain it, but in equal degree went to support another state of facts constituting contributory negligence which was not pleaded, instead of the state of facts which was pleaded, it cannot be said that the court should have given the affirmative charge for defendant against the counts for negligence on its part.

One count of the complaint, the 44th, charges that in the operation of a locomotive engine over and across Water street in the city of Mobile, the defendant "wantonly run over and killed Edward H. Shelton * * who was then and there upon the track of the defendant." We are clear to the conclusion that this count is not supported by the evidence as to the character of the place at which Shelton was killed, taken in connection with the evidence as to the manner in which the engine was driven upon and over it. The place was at the intersection of Beauregard and Water streets in the city of Mobile where defendant's track upon which Shelton was killed crosses Water street on Beauregard street. The direction of this track across Water street is not, however, the same as Beauregard street, but it enters upon both streets at the southeast corner of their intersection, and proceeds thence in a west-by-north direction across Water street out into Beauregard street curving the while a little to the south until finally it unites with another of defendant's tracks which runs due east and west along Beauregard street. This junction is about one hundred and fifty feet west of Water street. The evidence shows that Shelton was proceeding along Beauregard street and that if he was stricken by the locomotive it was while he was passing over the track of defendant where it runs diagonally from the southeast corner of the two streets across Water street and out into Beauregard street. This track in gaining its junction with defendant's main track running up and down through Beauregard street passes diagonally over an intervening track of the Louisville & Nashville Railroad Company, also running east and west along Beauregard street, the space of contact between the two in effecting this crossing covering and extending several feet on each side of the west line of Water street. This Louisville &

14ǫ

Nashville track all along there for several hundred feet had planks, making a floor, between the rails, and seems to have been customarily used as a walk by persons passing along Beauregard street. It may be that Shelton used this walk as he came from Commerce up Beauregard street to Water street just before the disaster. The evidence was conflicting as to the number of people who ordinarily passed the point where Shelton was stricken at the hour of this occurrence, about 7:15 o'clock on a winter's evening; but there is no conflict as to the fact that on this occasion there were certainly not more than three people at or near the place, other than the crew of defendant's train. But whatever the jury might have concluded as to the extent and frequency of the use of this crossing ordinarily at that hour of the night, there was no room for a conclusion on their part that defendant's employes on the occasion in question acted recklessly or wantonly in driving the engine upon and over it, so far as the character of the place is concerned. The evidence is without conflict that when the engine approached, went upon and passed over Water street its bell was being constantly rung and its headlight was burning brightly. The evidence is equally free from conflict to show that the rate of speed of the engine all along there was very slow—probably not over four, certainly not over five miles an hour. Conceding the fact as to the extent of the use of this crossing to be the extreme which any of the evidence tended to show, it yet can by no means be said that to drive an engine with its bell constantly ringing and its headlight brightly burning at such rate of speed, not faster than a man can walk, over that crossing would likely or probably result in injury to persons on the crossing; and, therefore, it not only cannot be said that the enginemen acted recklessly or wantonly in so driving it, but the fact that they did so drive it affords no basis for a conclusion of wantonness to be drawn by the jury. The ringing of the bell was a call to passers-by to avoid the track; the rays of the headlight on that dark night was notice even to the deaf (and there was evidence tending to show that Shelton was partially deaf but none that the enginemen knew it), that

the engine was approaching, and the slow approach of the engine afforded abundant opportunity for persons on or near the track to conserve their safety by acting upon these warnings of danger. It is true the city ordinance required a flagman to be on the front of the engine in crossing this street, that no flagman was there on this occasion and that this was negligence on the part of the defendant. But it was negligence simply—against which, of course, contributory negligence on the part of the intestate would be a defense—and the absence of such flagman did not make it incumbent upon those in charge of the engine to assume that persons would probably stand upon the track in the growing glare of the headlight, with the warning clang of the bell in their ears and be run over, because there was nobody there to tell them by word of mouth, what—as the enginemen did have a right to assume—they already knew—that the engine was approaching. The question is to be considered from the point of view of the engineer, and it is simply this: Would a man of ordinary prudence in the place of the engineer have had a consciousness that to run the engine on this crossing as this engine was run would probably or was liable or likely to result in injury to somebody on the track at the crossing; and we are convinced that there was nothing in the situation or in what the engineer did upon which the jury would have been authorized to conclude that there was such consciousness of the peril to others of his conduct as would fill the charge of wantonness.

What we have said above has reference solely to the character of the place at which Shelton was killed, assuming that he was stricken by the engine, and to the manner of driving the engine over that place, the discussion involving no consideration as to whether the enginemen knew as a fact dissociated from the character of the place that Shelton was in a position of peril in front of the engine in time to have conserved his safety by stopping the engine or by checking its speed. It is now to be determined whether there was any evidence adduced tending to show that the engineer or fireman saw Shelton so in a position of peril and then failed to take proper action to avert the disaster, for

if knowing of his perilous position they *neglected* to take measures to save him and which if taken would have saved him, this would be such negligence of the defendant as would entitle plaintiff to recover notwithstanding Shelton was himself negligent in having put himself in that position, and if with knowledge of his peril they, or either of them, purposely or consciously omitted action to save and which would have saved him, this would be wantonness for which the company would be liable however negligent Shelton may have been. Moreover, if they, or either of them, knew of his peril, and could have averted the catastrophe and did not, it was open to the jury to find that their failure to make preventive effort was wanton.    Now as to the evidence in this connection :   The engineer and fireman each testified that he was looking ahead of the engine all through this operation of approaching and crossing Water street and that he saw nobody in front of the engine. McDowell, the flagman, testified that when the engine was yet fifty feet from Water street, and approaching it, he saw a man for a few moments about the middle of the crossing of that street, that he saw him by the rays of the headlight, that these after a few moments passed over this man and he could not then see him as the night was quite dark.    It is insisted for appellee that as both the engineer and fireman were looking ahead at that time, they must also have seen this man, or that the jury had a right to find that they did see this man, and further to infer from all the circumstances that this person then on the crossing was Shelton.    This may be conceded.    But the concession does not import the right of the jury to find that the engineer or fireman was guilty of wantonness or even negligence in not taking action with reference to this man's presence on the track at that time and place.    He was then seventy-five feet away from the engine.    The engine was moving slowly, as we have seen.    The bell was ringing.    The man had just been enveloped in the glare of the headlight and its rays had lifted above him, and were, of course, still visible in front of him if his back was toward the engine.    If he was facing the engine he could not have failed to see it.    Under these circumstances

conceding that the enginemen thus saw Shelton, they undoubtedly had the right to assume that he knew of the approach of the engine and would avail himself of the ample time and opportunity at his command to get off the track before the engine reached him.   Indeed, considering the rate of speed of the engine and the distance he was in advance if it, he might well have proceeded along the track beyond the point at which it stopped after passing Water street, before it overtook him.   That if the enginemen saw this man—and he wa. Shelton—only when, or not after, McDowell saw him, there was no basis for a finding of either negligence or wantonness on the part of either of them in failing to control the engine with reference to him :  He was in no peril to the apprehension of prudent men in their position.

But there is yet another phase of the evidence which appellee insists tends to support the charge of wantonness.   As we have seen it was open to the jury to find that Shelton was on the track in front of the engine and was run over and in that manner killed.   It is also to be recalled that both the engineer and fireman testified that they were constantly looking ahead along the track as they crossed Water street.   The jury had a right to find that they saw the man whom McDowell saw on the crossing, and that that man was Shelton, as we have indicated.   These findings, as we have also indicated, would not authorize the jury to conclude that the enginemen were guilty of wantonness.   But the engineer further testified that "the light from the headlight will enable an engineer to see a person in front of the engine distinctly as close as eight or ten feet to the engine.   If the person is on the fireman's side, the fireman can see him.   If he was on the fireman's side of the engine he would have to be about fifteen feet or more in front of the engine for me to see him.   If he was on my side of the engine I could see him within two feet of the engine.  I could [on that occasion] have seen anybody on my side of the engine, and I could see a man fifteen feet in front of the engine on the left side, and I could have seen on the left side more than fifteen feet, but not closer.   The fireman could see a man on his

side of the track." Now, to summarize, we have tendencies of the evidence presenting this case: Shelton was on the track of the crossing seventy-five feet in front of the engine. He remained there till the engine reached him and ran over and killed him. The engineer and fireman were all the while looking ahead. Both of them could have seen him from the time McDowell saw him until the engine was within fifteen feet of him, if he was on the side of the track. After the engine had attained that proximity, the engineer could still have seen him until the engine got within two feet of him, if he was on the right hand side of the track. Similarly, if he was on the left hand side, he would have continued in view of the fireman till the engine was within two feet of him. If he was in the center of the track both the engineer and the fireman could have seen him until the engine was within eight feet of him. Very clearly if either of them did not see him standing there on the track while the engine reduced the distance to him from seventy-five to two or even eight feet, the jury were authorized to find that his position was one of manifest peril and that a sense of it was impressed upon the enginemen. The engine could have been stopped in five feet. Its slow motion could have been materially reduced in two feet. Seeing him there, they could have averted the danger to him by stopping the engine. They made no effort to stop it, and he was run upon and killed. The important question yet remains: Did the engineer or fireman actually see him in this perilous position? Or, rather, does the evidence we have detailed afford the basis for an inference by the jury that one or both of them did in fact see him in such position? Both of them testified that they did not see him or anybody on the track at that time and place. But might not the jury find to the contrary notwithstanding? We think so. The jury were not bound to believe or disbelieve the testimony of these witnesses in its entirety. They could believe that they were looking ahead at the time, and that they could have seen a man on the track, and disbelieve their statements that they did not see any one on the track. And the conclusion on the evidential tendencies under consideration would be drawn

thus: Shelton was in a position of manifest peril on the track in front of the engine. He was in view of the enginemen. They were looking along the track where he was. Therefore, they must have seen him, and this though they testify that they did not.—*Ensley Railway Co. v. Chewning*, 93 Ala. 24, 31; *Louisville & Nashville Railroad Co. v. Trammell*, 93 Ala. 350, 354. It is upon these considerations that we hold the trial court's rulings on instructions requested in relation to the charge of wantonness made by the 44th count to be free from error.

It is stated in the brief for appellant that "the negligence averred in the 10th count consisted in the fact that the engine was moving around a curve and passing therefrom into one of the public streets of the city of Mobile, in the night time, without giving a sufficient warning of its approach;" and a like statement is made in the brief for appellee. The 10th count found in this record, however, contains no such averment, its sole allegation of negligence being that the defendant "in the operation thereof [the engine] negligently ran over and killed Edward H. Shelton." The ground of demurrer which is discussed in the brief is, therefore, not apt, and the arguments upon it are abstract.

Appellant assigns as error the overruling of its demurrer to the 14th count and insists upon this assignment in the brief. The appellee argues in support of the supposed action of the court overruling the demurrer to this count. But it appears by the record that the demurrer to this count was *sustained*. The judgment to that effect was rendered on January 28th, 1902, and is as follows: "This day came the parties by their attorneys, and this cause coming on to be heard, and the defendant's demurrers to the 14th, 21st, 22nd, 23rd and 46th counts of complaint as amended Jan'y 20, 1902, being argued by counsel and understood by the court: It is ordered and adjudged by the court that the defendant's said demurrers to 14th, 21st, 22nd, 23rd and 46th counts of complaint as amended on Jan'y 20, 1902, be and they are hereby sustained."

It will suffice to say of the action of the court denying defendant's motion to amend its answers to interroga-

tories propounded to it by plaintiff under the statute, that it involved no injury to the defendant. The amendment proposed was to strike out certain answers made by the employes of defendant on information and belief and insert in lieu thereof the same statements made by the employes who had knowledge of the facts set forth in them. These answers were subsequently stricken out on plaintiff's motion, and the employes having knowledge of the facts were subsequently examined as witnesses by the defendant and fully deposed to every fact sought to be inserted in the answers to the statutory interrogatories. On this state of the case, it is plain that defendant suffered no detriment from the denial of his motion to amend its answers to the interrogatories.

The court did not err in striking from such answers the statement by the person making them that a flagman did not precede the engine over the crossing "for the reason that the engine was moving very slowly and expected to stop on the crossing or just on the other side of the crossing." Turner and Roach, by whom the defendant answered the interrogatories, could not except from hearsay know why McDowell, the flagman, did not precede the engine on this occasion across Water street, nor why Doyle, the engineer, did not have him do it; and surely they could not know that *the engine,* or the engineer, "expected" to stop just beyond the crossing. Moreover, the reasons for the failure to have the crossing flagged were wholly immaterial.

It is not conceivable that defendant could have been prejudiced by the plaintiff's reading *to the witness Nicholson* his examination on a former trial as stenographically reported. To the contrary, this would naturally be of benefit to the defendant by way of refreshing the memory of its witness. It does not appear that this report of the former examination was introduced in evidence or was read to or even in the presence of the jury, though the presence of the jury when it was being read to the witness would be of no consequence.

We are not prepared to say that the evidence was so overwhelming to the conclusion that Shelton was killed in an effort to get upon the running board of the engine

or tender, as deposed by Harrison Baker, that the circuit court erred in overruling defendant's motion for a new trial; and that is the only theory of the case upon which there could be any serious doubt as to the propriety of that action, especially in view of the state of the pleadings as to contributory negligence.

We have thus considered all the rulings of the trial court which are discussed in the brief for appellant. We find no error in them; and the judgment must be affirmed.