198 So. 759

**SOUTHERN RY. CO. v. WHITE.**

**7 Div. 539.**

Court of Appeals of Alabama.

Aug. 6, 1940.

Rehearing Denied Oct. 29, 1940.

Irby A. Keener, of Center, and E. O. McCord, of Gadsden, for appellee.

Hood, Inzer, Martin & Suttle, of Gadsden, for appellant.

BRICKEN, Presiding Judge.

Appellee brought suit against appellant, in the court below, on March 17, 1938, to recover the sum of $1,000 as damages, alleged to have been sustained by him on December 2, 1937, as the proximate result of the negligent operation of the defendant's locomotive and train of cars, by defendant's servants, or agents, acting within the line of their duty, or within the scope of their employment, over a described crossing of said railroad by a highway, at, or near, Mackey, a flag station on defendant's railroad in Cherokee County, Alabama, whereby plaintiff's motor truck,

then loaded with six head of beef cattle, was run upon or against by defendant's said locomotive and train of cars, smashing and damaging said motor truck, killing three head of plaintiff's beef cattle and damaging the remainder of said cattle then on said motor truck.

The complaint contained three counts. This appeal is concerned with count 2 of the complaint alone, which charged subsequent negligence, and upon which the defendant joined issue. The sole question submitted to the jury under the general oral charge of the court, aside from the amount of plaintiff's damages, if any, was whether or not the engineer, who was then in control of the running of the locomotive and train of cars, saw plaintiff's truck and beef cattle in a position of peril and then failed to take proper action to prevent striking them, which action if taken upon the discovery of the peril would have prevented the collision.

Plaintiff's testimony, without dispute, tended to show that as the direct result of the striking of his truck, at said crossing by said locomotive and train of cars, three head of plaintiff's beef cattle were killed, and the remainder were bruised and injured. The jury returned a verdict in favor of the plaintiff, fixing his damages at the sum of $135, which sum, according to the testimony, did not exceed the damages to plaintiff's cattle alone. The judgment of the trial court was pronounced and entered in favor of plaintiff and against the defendant on April 18, 1939, in accordance with the verdict of the jury, for said sum of $135.

The defendant filed its motion for a new trial on May 1, 1939, alleging that the verdict of the jury was not sustained by a preponderance of the evidence; that the evidence was insufficient to support the verdict of the jury; that the verdict of the jury, and the judgment of the court thereon, was contrary to law; that the general charge as to count 3 of the complaint, which was requested by the defendant, in writing, should have been given by the trial court.

The court overruled and denied the motion for a new trial, and defendant appeals to this court from the final judgment, and from the judgment of the court overruling and denying its motion for a new trial.

The assignment of error is as follows: (1) that the trial court erred in refusing to give the general affirmative charge, requested in writing by defendant as to count 2 of plaintiff's complaint. (2) That the trial court erred in sustaining plaintiff's objection to a certain specified question propounded by defendant to the plaintiff when plaintiff was testifying as a witness. (3) That the trial court erred in overruling and denying defendant's motion for a new trial.

Appellant's assignments of error 1 and 3 necessitate a brief reference by this court to the testimony as set out in the bill of exceptions. It was proved, without dispute, that a highway or private road crossed defendant's railroad track at Mackey and that plaintiff's motor truck, loaded with six head of beef cattle, was being driven along and over this road, or highway, at about the time defendant's train from Gadsden, or Attalla, was due to arrive going in the direction of Centre. When this truck reached said crossing the driver, David White, without first stopping, looking and listening, attempted to drive said truck over and across said crossing and before he succeeded in getting said truck over said crossing the defendant's locomotive and train of cars ran against it. As to this, said truck driver, David White, testified as follows: "My name is David White. I was driving the truck at the time the train hit it; when we got the cattle loaded this side of the house I pulled off in low gear and went down the hill some 75 yards to the railroad; from the foot of the hill I looked down the railroad, down toward the railroad and did not see any train then, it was around the curve, so I pulled on down almost to the track and I was in low gear and changed in super-low gear and my front truck crossed the railroad and the hind wheel mounted the first rail and dropped into the centre of the track and I heard the roar of the train and then I stepped on the accelerator with all I had and jerked the hind wheels off the track to the end of the cross ties and the train caught us just behind the front wheel and knocked it off out there and killed two cows dead and broke one down and crippled two more. I had six cows on there."

On cross-examination this witness testified: "My father's house is about 200 yards from the track where the collision occurred. I loaded the cattle about 50 yards from the house; I was about 150 yards from the railroad when I got loaded. I drove on down toward the crossing; about 75 yards from the track I looked,

but never did stop dead still, when I got to the track I glanced at it, I did not stop still; when my hind wheel mounted the first rail and in the center of the track I heard the roaring of the train. I had not seen the train before I heard it roaring. The front part of the truck had crossed the track when I heard the roaring of the train, I looked up and it was so close it was impossible for me to get the balance of the truck off before the train got there. When I was 75 yards away and looked down the track I could see to the curve about 350 yards,—there is a curve there in the cut and you cannot see as far down as Slackland when 75 yards from the track."

As to what happened at the crossing, and describing the collision, C. J. Hoard, a defendant's witness, testified on direct examination, that he was the engineer on the train at the time of the collision; that it happened about 6:46; that the train was coming from Gadsden, or Attalla, running South, and was on regular schedule time. He further testified: "The engineer sits by the side of the boiler on the right hand side and you cannot see on the left hand side. When I first saw the truck it was approximately 80 feet in front of me, before I got to the crossing, it just went across the railroad right in front of me and stopped just before he got over the crossing, he came to a stop I guess something like two or three seconds before I hit him; it was impossible for me to stop. I applied the brakes in emergency and stopped as soon as possible. It would cause some jar to the train to put the brakes on in emergency. The truck rolled over the track and stopped just before I hit him; I did not see him coming up on the track, I could not see from the left hand side."

On cross-examination, this witness testified: "My name is C. J. Hoard; I have been running on this train down here for five years, I reckon. The engineer can look out in front of the train. There was nothing to prevent my seeing ahead straight up the track. It is 600 yards straight track at that place and I looked up and did not see nothing nowhere; in that 600 yards approaching that crossing you could see on either side a considerable distance; it is only when you get up close to the crossing and the locomotive got in between you and the crossing that I could not see. As I approached this crossing I was looking ahead, I did not see anything;

I was looking especially for I might be flagged there to a stop. I don't know where the truck was, if he had been coming as fast as I was, we were running around 20 miles an hour, he could have left the house at the top of the hill and got to the crossing by the time I did. I don't know how close he was when he stopped, if he did stop, I did not see him, I was looking directly down at the crossing; I was looking at the view in front of me."

Mrs. Ruth Hampton, a teacher, witness for plaintiff, was travelling on a school bus on the morning of the collision. The public highway, along which she was travelling, was located near the railroad track of defendant, and ran parallel to that track. She could and did see the train and the engineer, and as to what the engineer was doing at the time of the collision she testified: "The bus and train traveled along close together for about a mile, I guess. Some of them, school children, in the bus, were waving at the trainmen, who were waving back at them for about a mile. The engine was a little behind the bus and when we got up to Mackey, where the road turns out to the railroad crossing, the bus stopped to let someone get on. As well as I remember the engineer was still waving when the engine got up to the crossing, when I last saw him, he was up even with the truck. I saw the truck before the train hit it, it was moving slow."

So the question is—did the engineer actually see the truck and cattle in a perilous position and in time to have prevented the collision by taking precautionary measures then at his command? It is clear to this court that if the engineer was looking down the railroad track, toward the crossing, for a distance of 600 yards as the train approached the crossing, as he testified, then there was evidence tending to show, or from which reasonable inference may have been drawn, that he did see the truck and cattle, in a position of peril, and that he then failed to use effective means at his command to avoid striking them, which action if taken by him upon his discovery of the peril, then imminent and impending, would have averted the collision.

Under the testimony in this case the jury may have reasonably inferred that after the engineer discovered the imminent and impending peril to plaintiff's truck and cattle said engineer did nothing whatever to avoid striking them, but heedlessly and negligently risked the truck clearing the crossing entirely before the engine reached

it, for the engineer testified: "If the truck wheels had made one more revolution the truck would have been clear of the crossing." Under this testimony the jury may also have reasonably inferred that the engineer, although he discovered and was aware of the peril to plaintiff's truck and cattle, heedlessly and negligently turned his attention to the school children on the school bus, instead of doing that which he was able to do to avoid striking the truck and cattle, namely, immediately applying the brakes, thus slackening the speed of the train, as he could and should have done, which would have enabled plaintiff's truck and cattle to have passed over the crossing without injury.

It is apparent that there was a conflict in the testimony of the plaintiff and that of the defendant, or in its reasonable inferences, with respect to subsequent negligence upon the part of the engineer, in charge of the running of defendant's train, after his discovery of the immediate peril of plaintiff's truck and cattle. The jury may have drawn the inference from the testimony of defendant's engineer that he saw plaintiff's truck and cattle in impending danger and peril as the driver attempted to cross defendant's railroad track, although the engineer swore he did not see the truck at any time before it reached the crossing, and did not see it as the driver started to cross. The engineer testified that immediately preceding the collision he had been looking down the perfectly straight railroad track as the train travelled a distance of 600 yards, with nothing to obstruct his vision of both sides of the crossing until so near it that the portion of the locomotive ahead of his seat in the cab would come between his line of vision and the left hand side of the crossing, in the direction he was going. From this testimony the jury may have found that the engineer saw the truck and cattle in time to have prevented the collision, notwithstanding he testified that he did not see them. Southern Railway Co. v. Shelton, 136 Ala. 191, 34 So. 194; Mobile & Ohio R. R. Co. v. Williams, 219 Ala. 238, 121 So. 722.

The decisions of this court and the Supreme Court declaring when, and under what conditions, the affirmative charge may be given, are too numerous and too well known and understood to need citation here. Suffice it to say that because of the conflict between the testimony of the plaintiff and that of the defendant, or in the reasonable inferences that the jury may have drawn from that testimony, the trial court did not err in refusing to give the general affirmative charge against the second count of plaintiff's complaint, which was requested by the defendant.

The conditions under which a trial court may set aside the verdict of a jury on the grounds that said verdict is not sustained by the evidence, or a preponderance of the evidence, are likewise well known and understood by the bench and bar of this State. The law covering this question is clearly and emphatically declared, with logic, reason and common sense, in the case of Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738, which has been consistently followed and approved by the appellate courts of this State. With the pronouncements of that case before us, we are of the opinion that the trial court did not err in overruling and denying defendant's motion for a new trial.

We do not agree with appellant in its contention raised under the second assignment of error. Whether or not the vendor of the truck to plaintiff carried insurance thereon and had repaired the damages to said truck arising from the collision, without cost to plaintiff, merely tended to bring in a side issue and confuse the jury. Moreover, the verdict of the jury, under the testimony in the case, did no more than compensate the plaintiff for the destruction of such of his cattle as were killed in the collision and for the injury to and cost of keeping, feeding and caring for those that were not killed in that collision.

We find no error in the record of which appellant can justly complain. The judgment of the trial court, from which this appeal was taken, will stand affirmed.

Affirmed.